IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

BEVERLY L. HEARD WILLIAMS,  :
     Plaintiff,          :
                         :
                         :
vs.                   :        CIVIL ACTION 14-292-CG-M
                         :
KENYEN R. BROWN, *et al.*,   :
     Defendants.        :
                         :

## REPORT AND RECOMMENDATION

This action is before the Court on Plaintiff's Amended Complaint (Doc. 16), Defendants' Motion to Dismiss and Memorandum in Support (Doc. 20), Plaintiff's Response in Opposition thereto (Doc. 25), and Defendants' Reply to Plaintiff's Response. (Doc. 26). Upon careful consideration and for the reasons set forth herein, it is recommended that Defendants' Motion to Dismiss be granted, and Plaintiff's Amended Complaint be dismissed with prejudice.

### I.    Facts and Proceedings

The instant action stems from an action for forfeiture *in rem,* which Plaintiff is presently contesting under the Civil Rights Action codified in 42 U.S.C. § 1983. The underlying forfeiture action was based on an extensive undercover investigation and successful criminal

prosecution of illegal drug (crack cocaine) activity on the premises of 801 East Franklin Avenue, Foley, Alabama, which belonged to Plaintiff at that time.  On March 12, 2012, the United States by and through Kenyen R. Brown, United States Attorney for the Southern District of Alabama, and Alex F. Lankford, IV, Assistant United States Attorney, filed a complaint for forfeiture *in rem* against Plaintiff's property in *United States v. One Parcel of Real Property and All Improvements Thereon Located at 801 East Franklin Ave., Foley, Ala.,* C.A. No. 13-117-CG-B.  It was alleged that the subject real property was being used to commit or to facilitate the commission of a violation of the Controlled Substances Act, which is punishable by more than one year's imprisonment.  (Doc. 20-1 at 1).[1]  According to records in the Office of the Judge of Probate, Baldwin County, Alabama, Plaintiff Beverly Heard, also known as Beverly Williams, held title to the defendant property. (*Id.* at 2).

The crack dealers who regularly operated from a shed on the property were Clifton Heard, Sr. (Plaintiff's ex-husband), and Plaintiff's two sons, Clifton Fidele Heard, and Jesse Heard.  (*Id.* at 3, 5).  Each dealer was arrested

---

[1] As requested by Defendants, the Court takes judicial notice of its files and records regarding the underlying forfeiture action.  Fed. R. Evid. 201.

and plead guilty to conspiring with intent to distribute 500 grams or more of a mixture or substance containing a detectable amount of cocaine, an offense punishable with a term of imprisonment or more than one year, namely, not less than 5 nor more than 40 years. (Doc. 20-1 at 9).

Other dealers selling drugs on the property were also arrested, namely, Richard Holmes, who told investigators that Plaintiff Beverly Williams, Jesse Heard's mother, knew about the drug transactions at 801 East Franklin. (*Id.* at 5). Clifton Fidele Heard claimed that he and his brother, Jesse, never sold drugs in front of his mother or sister, and Clifton Fidele Heard further advised that his mother moved from 801 East Franklin Avenue due to an argument with Jesse Heard over his illicit drug activity. (*Id.* at 6). Jesse Heard denied ever selling drugs in front of his mother, but did admit that his sister knew of the drug sales and she conspired with him to conceal his drug proceeds by allowing vehicles bought and owned by Jesse to be registered in her name. (*Id.* at 9).

Once the prosecution for the drug offenses were concluded, counsel for the United States filed, served and posted according to statute[2] its Verified Complaint for Forfeiture *In Rem* and subsequently filed its

---

[2] 18 U.S.C. § 985(c)(1)(B).

Acknowledgement of Service on March 15, 2013. (Doc. 20-2 at 1). Despite receiving adequate notice, Plaintiff Beverly Heard Williams failed to file a claim and the required responsive pleadings, thereby, forfeiting her opportunity to assert an innocent owner defense.[3] (Doc. 20-3 at 3). As a result, this Court entered an order resolving all matters and issues joined in that action, and for the premises to be forfeited by Plaintiff Beverly Heard Williams to the United States according to law pursuant to Title 21, U.S.C. § 881(a)(7) and Title 18, U.S.C. § 985(c)(1)(A). (*Id.* at 6).

On June 24, 2014, Plaintiff Beverly Heard Williams filed the present § 1983 Civil Rights Act action against Defendants United States Attorney Kenyen R. Brown and Assistant United States Attorney, Alex F. Lankford. (Doc. 1). After requesting leave, Plaintiff filed her Amended Complaint, (Doc. 16), to which Defendants filed their Motion to Dismiss. (Doc. 20). Plaintiff filed her

---

[3] In asserting an innocent owner defense, Plaintiff would have had to prove by a preponderance that upon learning of the conduct giving rise to the forfeiture, she did all that could reasonably be expected under the circumstances to terminate such use of the property to avoid its forfeiture. (Doc. 20-3 at 3)(citations and quotation marks omitted). But one who abandons property and leaves it to the devices of those using it as an illegal drug operation and does nothing to try to stop it cannot be an innocent owner. (*Id.*)(citations omitted).

Response in Opposition thereto, and Defendants filed their Reply. (Docs. 25, 26). Being fully briefed, the Motion is ripe for consideration. The facts of the present case are as follows.

Plaintiff's sixty-eight page Amended Complaint states, in sum, that Defendants violated her civil rights when they "abuse[d] their power of authority by executing the claim of forfeiture of real property" against her home. (Doc. 16 at 2). She contends she has "never been implicated in any illegal activities nor narcotic sales or distribution," and there are no records that she was ever charged or convicted of such. (*Id.*). Plaintiff states there is no proof that she had the property as "straw holder" for her sons to sell and/or distribute narcotics. (*Id.*). Plaintiff further contends that Defendants, "through false representation of facts and evidence" caused this action, which substantially violated her civil and constitutional rights as an American citizen, when they asserted that Plaintiff violated the controlled substance act by knowing about and allowing the ongoing drug activity to occur. (*Id.*). In support, she states she was "never investigated for [drug activity], no criminal complaint was ever filed against [her], the defendants [sic] own sworn account of the information

demonstrates that no narcotics were sold from the house itself but from the shed and yard."  (*Id.*).

For part of her Amended Complaint, Plaintiff utilized a form complaint; attached to the form, though, is a repetitive and lengthy rendition of her allegations already set out in the form.  According to the form, Count I of Plaintiff's Amended Complaint is titled, "Illegal Seizure of Home and Property that Belongs to Plaintiff."  She alleges that "Mr. Alex Lankford and Mr. Kenyen Brown wrongfully stated that my home was simply a [sic] holding title as a 'straw' for my sons.  And that my sons were the beneficial owners of my home and property which was misreprentation [sic] of the actual facts."  (Doc. 16 at 6).

Count II is titled, "Pain and Suffering Caused by Unlawful Seizure of My Home and Property," and states that "Mr. Lankford and Mr. Kenyen Brown knowingly caused me undue hardship and pain when they made me homeless along with my grandchildren.  Mr. Lankford would not allow me to get the necessary items out of my home such as medicine, the baby breathing machine, the children [sic] medicine, and no clothing.  Count III is titled, "Destruction of non replaceable personal property of sentimental value.  My deceased children [sic] photos[.]"  (*Id.*).  "Mr. Lankford

and Mr. Brown did systematically caused [sic] the destruction and displacement of the family.  Many valuable items of which can never be replaced." (*Id.* at 6-7).  For her injuries, Plaintiff states that she has "been made homeless and displaced resulting from the actions of the defendants.  The irreversible damage and disfunction [sic] placed upon my family when defendants maliciously disregarded my civil and criminal constitutional rights as an American citizen." (*Id.* at 7).

For relief, Plaintiff requests "complete compensation for lost [sic] of home and property through illegal seizure.  Financial compensation for the lost [sic] of home, property and damages." (*Id.*).  In a separate portion of her Amended Complaint, Plaintiff requests seven remedies: "1) declaratory judgment that the defendants [sic] solicitation policy and associated practices facially and as applied violated the plaintiff [sic] rights under the 5th, 6th, and 14th Amendments, 2) a declaratory judgment that defendants solicitation of the plaintiff's sons, daughter and associated deprivement [sic] of property and civil liberty, facially and as applied violated plaintiff [sic] 5th, 6th, 8th, and 14th amendment [sic] of the constitutional [sic] of the United States, 3) a declaratory judgment that the defendants' abridgement of plaintiff

[sic] cemetery [sic] of innocence violated plaintiff [sic]
rights under the 5th 6th, 8th and 14th amendments of the
constitutional [sic] of the United States. 4) a preliminary
and permanent injunction prohibiting the defendants, their
agency, officials and any other person acting in [sic]
their behalf from enforcing solicitation and associated
practices which are challenged in this complaint, 5)
compensatory and nominal damages for the violations of
plaintiff [sic] 5th, 6th, 8th, and 14th amendments rights
under the constitutional [sic] of the United States, 6)
Plaintiff [sic] reasonable attorney [sic] fees, any cost,
and other cost and disbursements in this action pursuant to
42 U.S.C. 1983 [sic], 1985 [sic] Civil Rights, 7) all other
further release to which plaintiff may be entitled." (*Id.*
at 14).

Attached to Plaintiff's Amended Complaint are three
affidavits.  First is Plaintiff's own affidavit, which
states in pertinent part that Plaintiff was "never in no
way [sic] involved directly or indirectly in illegal drug
activities at [her] home, . . . mortgage payments were
being made by Katie Fairley because I had borrow [sic]
money on my home from the equity of my home to help her to
improve her business . . ." and when Fairley got in a bind
paying on the mortgage, Plaintiff's uncle stepped in and

8

paid it based on prior debt he owed to Plaintiff; that "furniture, appliance and other household items were purchased by money [Plaintiff] received from [her] deceased husband [sic] insurance policy settlement and funds earned from years of employment, . . . [and] there were many wall paintings and other things in [her] home that were ill-replaceable. . . ."  (*Id.* at 68).

The second affidavit by Katie Fairley states that she received a loan from Plaintiff through her line of equity and that Fairley was making the monthly mortgage payments until May or June of 2013, when Plaintiff's uncle began making them instead.  (*Id.* at 17).  The last affidavit is from Andrew Thomas, Plaintiff's uncle, and he states that he has known Plaintiff his entire life, that she is a model citizen trying to make an earnest living.  (*Id.* at 18).  He further states that he paid Plaintiff's monthly house note payments when Katie Fairley was unable to do so.  (*Id.*).

Defendants filed their Motion to Dismiss, (Doc. 20), asserting that Plaintiff's Amended Complaint is due to be dismissed since Defendants are entitled to immunity from suit, namely, absolute and qualified immunities.  (*Id.* at 2-11).  Defendants also contend that Plaintiff's Amended Complaint is barred by the doctrine of collateral estoppel, and should be dismissed on such grounds.  Attached to their

Motion and Memorandum is the underlying Verified Complaint for Forfeiture *In Rem* and the record succeeding it.  (Doc. 20-1).

Plaintiff filed her Response in Opposition to Defendants' Motion to Dismiss stating that she is "in no way [] prosecuting the defendants in their capacity as officers of the law.  However, [she] is only moving to prosecute the illegal seizure and forfeiture of her home and personal effects mentioned. . . ."  (Doc. 25 at 1). Plaintiff further contends that "the defendants [sic] misstatement to the court that this civil action is against the enjoyed immunity of the defendants is indeed a blank-face [sic] attempt by the respondant [sic] to refrain and distort the truth in facts related to this civil action. This is indeed the case in point since the Plaintiff has never alleged any entitlement of relief personally from the defendants themselves." (*Id.* at 2).  Plaintiff states that "defendants have reckless [sic] violated Plaintiff's constitutional rights and destroyed her life."  (*Id.*).  The remainder of Plaintiff's response addresses Defendants' Motion to Stay Discovery (Doc. 22), which has already been ruled on by the Court making the remainder of the Response irrelevant to this analysis.

Defendants filed their Reply to Plaintiff's Response stating that Plaintiff's Response gives the Court all the more reason to dismiss her case if she is indeed not seeking relief from the named defendants in her action.

## II.   Discussion

### a. Motion to Dismiss Standard

A defendant may move to dismiss a complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) if the plaintiff has failed to state a claim upon which relief may be granted. To survive a 12(b)(6) motion to dismiss for failure to state a claim, the complaint "does not need detailed factual allegations;" however, the "plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 555 (2007) (internal citations omitted).  Factual allegations, on the assumption that all allegations in the complaint are true, must be enough to raise a right to relief above the speculative level and state a claim for relief that is plausible on its face.  *Id.* at 555, 570.

The Court accepts all facts as true and limits its consideration to the pleadings and exhibits attached thereto.  *Abraham v. Greater Birmingham Humane Soc'y, Inc.,*

No. 2:11-CV-4358-SLB, 2014 WL 1043230, *1 (N.D.Ala. Mar. 17, 2014)(*citing Grossman v. Nationsbank, N.A.,* 225 F.3d 1228, 1231 (11th Cir. 2000)(citation omitted). This acceptance, however, does not apply to legal conclusions or a legal conclusion couched as a factual allegation. *Ashcroft v. Iqbal*, 566 U.S. 662 (2009).  All reasonable inferences are drawn in favor of the plaintiff; however, unsupported conclusions of law or of mixed fact and law have long been recognized not to prevent a Rule 12(b)(6) dismissal.  *Abraham,* 2014 WL 1043230 at *1 (*citing Dalrymple v. Reno,* 334 F.3d 991, 996 (11th Cir. 2003)(citation omitted).

In a *pro se* litigant's action, the allegations are given a liberal construction by the Court.  *Haines v. Kerner*, 404 U.S. 519, 520, (1972) (holding that a *pro se* litigant's allegations are held to a more lenient standard than the those of an attorney).  However, the Court does not have "license . . . to rewrite an otherwise deficient pleading [by a *pro se* litigant] in order to sustain an action."  *GJR Investments v. County of Escambia, Fla.*, 132 F.3d 1359, 1369 (11th Cir. 1998), *overruled on other grounds by Iqbal*, 556 U.S. 662 (2009).  Furthermore, a *pro se* litigant "is subject to the relevant law and rules of court including the Federal Rules of Civil Procedure."

*Moon v. Newsome*, 863 F.2d 835, 837 (11th Cir.), *cert. denied*, 493 U.S. 863 (1989).

b. Immunity

When considering a claim of governmental immunity, the presumption is that qualified immunity rather than absolute immunity is sufficient to protect government officials in the exercise of their duties.  *Fry v. Melaragno,* 939 F.2d 832 (9th Cir. 1991)(citations and quotation marks omitted). In some instances, however, the Supreme Court has determined that certain government officials require absolute immunity from liability in order to enable them to function independently and effectively, without fear of intimidation or harassment.  *Id.*  Accordingly, the Court has granted absolute immunity to "the President, judges, prosecutors, witnesses, and officials performing 'quasi-judicial' function, and legislators."  *Id.* (citing *Mitchell v. Forsyth,* 471 U.S. 511, 520 (1985).   The Supreme Court has also held that "in initiating a prosecution and in presenting the State's case," the state prosecuting attorney is absolutely immune from a civil suit for damages under 42 U.S.C § 1983.  *Fry* at 836 (*citing Imbler v. Pachtman,* 424 U.S. 409 (1976); *see also Rivera v. Leal,* 359 F.3d 1350, 1353 (11th Cir. 2004)("A prosecutor is entitled to absolute immunity for all actions he takes while

performing his function as an advocate for the government"). The differences between a state criminal prosecution and federal civil litigation for the purposes of immunity are next to none, and thus, those differences do not undermine the reasons justifying the application of absolute immunity. *Id.* Therefore, where a defendant's conduct is intimately associated with the judicial phases of an action, absolute immunity applies. *Fry* at 836 (citations omitted); *Elder v. Athens-Clarke Cnty., Ga, Through O'Looney,* 54 F.3d 694, 695 (11th Cir. 1995)("A prosecutor's decision to bring charges against a person, so long as the prosecutor is acting within the scope and territorial jurisdiction of his office, is immune from an action for damages under § 1983); *see also Butz v. Economou,* 438 U.S. 478 (1978)(stating that absolute immunity extended to agency officials performing adjudicatory and prosecuting functions, as well as to officials responsible for the decision to initiate or continue a proceeding, and attorneys who conduct trials and present evidence on the record to the trier of facts are absolutely immune from liability in damages for their decisions); *Flood v. Harrington,* 532 F.2d 1248 (9th Cir. 1976)(*citing Imbler,* 424 U.S. at 430).

Therefore, whether a "government attorney is representing the plaintiff or the defendant, or is conducting a civil trial, criminal prosecution or an agency hearing, absolute immunity is necessary to assure that advocates can perform their respective functions without harassment or intimidation." *Fry* at 836 (*Butz,* 438 U.S. at 512). "Given the similarity of functions of government attorneys in civil, criminal and agency proceedings, and the numerous checks on abuses of authority inherent in the judicial process, we [conclude] that the reasons supporting the doctrine of absolute immunity apply with equal force regardless of the nature of the underlying action." *Id.* (citations and quotation marks omitted).

Though Plaintiff states that she is "in no way prosecuting the [D]efendants in their capacity as officers of the Law [sic]," but rather she is "only moving to prosecute the illegal seizure and forfeiture of her home. . . ." (Doc. 25 at 1), for the sake of this analysis, it only makes sense for the Court to construe her allegations as alleged against Defendants in their official capacities as attorneys for the United States of America. The Defendants prosecuted both the criminal and forfeiture actions in their official capacities on behalf of the United States of America, all of which are undoubtedly intimately associated

15

with the judicial phases of their duties as United States Attorney and Assistant United States Attorney.  As such, the Court finds that Defendants' duties in the underlying case are intimately associated with the judicial processes of the case and are protected by absolute immunity.

Furthermore, Defendant Brown's duties in the underlying case were purely supervisory, and it is well settled that supervisory liability is not actionable under § 1983.  "As a supervisor, liability cannot be imposed against him under § 1983 for the unconstitutional acts of his subordinates on the basis of *respondeat superior* or vicarious liability." *Cottone v. Jenne,* 326 F.3d 1352, 1360 (11th Cir. 2003).  "Rather, a supervisor can only be held liable in a § 1983 action when the supervisor personally participated in the alleged unconstitutional conduct or that there is a causal connection between the actions of a supervising official and the alleged constitutional deprivation." *Franklin v. Curry,* 738 F.3d 1246, 1249 (11th Cir. 2013)(quotation marks omitted); *see also, Zatler v. Wainwright,* 802 F.2d 397, 401 (11th Cir. 1986)(in order to state a § 1983 claim, a plaintiff must establish a causal connection between a defendant's actions, orders, customs, or policies and a deprivation of his constitutional rights).

Plaintiff has not alleged in any fashion how Defendant
Brown personally participated in the alleged constitutional
violation, nor has she has she established a causal
connection between Brown's actions and the alleged
constitutional deprivation.  Without any allegations
sufficient to raise a claim for relief against Defendant
Brown, the Court finds that all claims asserted by
Plaintiff against Defendant Brown are due to be dismissed.

Regarding AUSA Lankford, the Court concludes he is
likewise covered by absolute immunity.  Filing and
litigating civil and criminal cases, namely, the underlying
forfeiture *in rem* complaint, are core duties assigned to
prosecutors and are indeed intimately associated with the
judicial phase of the criminal case from which the
forfeiture stems.  Filing and prosecuting cases of any type
which benefit the United States government are at the heart
of what it means to be a prosecutor, and Plaintiff has not
alleged any facts sufficient to show that Defendant
Lankford was acting outside the scope of his duties or the
jurisdiction of his office.  Without any allegation
sufficient to state a claim that Defendant Lankford has
actually deprived Plaintiff of her constitutional rights,

the Court finds that absolute immunity[4] extends to AUSA

Lankford's part in the underlying proceedings as well.

---

[4] To the extent it can be found that absolute immunity does not apply to the Defendants, the Court finds that qualified immunity shields them instead.  Though Plaintiff's Amended Complaint travels primarily under § 1983, which by its terms applies to authorities acting under the color *state* law, the Court will consider her Amended Complaint as if alleged properly under the Fifth Amendment Due Process Clause  and *Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics,* 403 U.S. 388 (1971).  "Qualified immunity shields federal and state officials from money damages unless a plaintiff pleads facts showing (1) that the official violated a statutory or constitutional right, and (2) that the right was 'clearly established' at the time of the challenged conduct." *Ashcroft v. al-Kidd,* __ U.S. __, 131 S.Ct. 2074, 2080 (2011).  The qualified immunity doctrine applies in both *Bivens* and Section 1983 actions.  *Pearson v. Callahan,* 555 U.S. 223, 232-36 (2009).

A government official's conduct violates clearly established law when at the time of the challenged conduct, the contours of a right are sufficiently clear that every reasonable official would have understood that what he is doing violates that right.  *al-Kidd,* 131 S.Ct. at 2083. Qualified immunity "protects all but the plainly incompetent or those who knowingly violate the law."  *Id.* at 2085.

The defense of qualified immunity is predicated on a showing by the Defendants that they were acting within the scope of their discretionary authority when the allegedly wrongful acts occurred.  *Lee v. Ferraro,* 284 F.3d 1188, 1194 (11th Cir. 2002)(quotation marks omitted).  To determine whether an official was engaged in a discretionary function, courts consider whether the acts the official undertook are of a type that fell within the employee's job responsibilities.  *Crosby v. Monroe Cnty.,* 394 F.3d 1328, 1332 (11th Cir. 2004).  *See also Holloman v. Harland*, 370 F.3d 1252, 1266 (11th Cir. 2004) ("Our inquiry is two-fold. We ask whether the government employee was (a) performing a legitimate job-related function (that is, pursuing a job-related goal), (b) through means that were within his power to utilize. . . [and]  we look to the general nature of the defendant's actions. . .").

c. Collateral Estoppel

In their Motion to Dismiss, Defendants contend Plaintiff's Amended Complaint is barred by the doctrine of collateral estoppel.  (Doc. 20 at 11).  The Court agrees.

Collateral estoppel, like the related doctrine of *res judicata,* has the dual purpose of protecting litigants from the burden of re-litigating an identical issue with the same party or his privy, and of promoting judicial economy by preventing needless litigation.  *Parklane Hosiery Co. v.*

---

There is ample evidence in the record before the Court that Defendants' decisions, supervision, actions, and filings were all taken pursuant to their discretionary authority.  As attorneys for the United States, there is no question that the acts of the defendants fell within the scope of their job responsibilities.  The prosecution of criminal and civil actions in which the United States is concerned speaks to the core of what it means to be an attorney for the United States of America.  Therefore, the Court finds the Defendants were exercising their discretionary authority when they filed the forfeiture action against Plaintiff's property.

With this finding, the burden would then shift to Plaintiff to show that qualified immunity would be inappropriate because the Defendants' conduct violated a constitutional right that was clearly established.  *Lee* at 1194 (citing *Saucier v. Katz,* 533 U.S. 194, 201 (2001).  The relevant dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted.  *Saucier* at 202 (citations omitted).  It is plain to the Court that Defendants' pursuit of the forfeiture action springing from the original drug prosecution is not in violation of a clearly established constitutional right.  Thus, Defendants are also entitled to the protection of qualified immunity.

*Shore,* 439 U.S. 322, 326 (1979)(citation omitted).  The doctrine applies where "the second action is upon a different cause of action and the judgment in the prior suit precludes re-litigation of issues actually litigated and necessary to the outcome of the first action."  *Id.* at 326 n. 5.

There are several prerequisites to the application of issue preclusion: 1) the issue at stake must be identical to the one involved in the prior litigation; 2) the issue must have been actually litigated in the prior suit; 3) the determination of the issue in the prior litigation must have been a critical necessary part of the judgment in that action; 4) the party against whom the earlier decision is asserted must have had a full and fair opportunity to litigate the issue in the earlier proceeding.  *CSX Transp. v. Bhd. of Maint. of Way Emps.,* 327 F.3d 1309, 1317 (11th Cir. 2003); *Dickinson v. Springhill Hosp., Inc.,* 397 F. Supp.2d 1337, 1345-46 (S.D. Ala. 2005); *Anderson v. Greene,* 2005 WL 3058095, at *3-4 (S.D. Ala. Nov. 10, 2005). "Collateral estoppel, or issue preclusion, bars relitigation of an issue previously decided in judicial or administrative proceedings if the party against whom the prior decision is asserted had a 'full and fair

opportunity' to litigate that issue in an earlier case."
*In re St. Laurent,* 991 F.2d 672, 675 (11th Cir. 1993).

The Court finds that all prerequisites to the
application of collateral estoppel have been met.
Plaintiff was personally served with a copy of the
Complaint and Notice of Forfeiture (Doc. 20-2 at 1), giving
her a full and fair opportunity to contest the forfeiture,
which she did not do.  Consequently, this Court determined
that civil forfeiture of the property involved in the drug
activity was proper, and as such, ordered the subject
property forfeited to the United States.  (*See* Doc. 20-3).
The issue of the propriety of the civil forfeiture was
identical in the civil forfeiture action and in this
action; the issue was actually litigated in the prior
action; and the determination of the issue in the civil
forfeiture action was a critical necessary part of the
judgment in that action. Once served with notice of the
forfeiture *n rem* case, Plaintiff had every opportunity to
contest the taking of property, but she chose not to do
anything at all.  To allow her to proceed with this action
would give her two bites at the apple and create a waste of
judicial resources due to her own dilatory and careless
conduct.  Therefore, the Court finds that Plaintiff is
collaterally estopped from re-litigating the propriety of

the civil forfeiture of the property located at 801 East
Franklin Avenue, Foley, Alabama.

### III. Conclusion

Based on the forgoing, the Court recommends that
Defendants' Motion to Dismiss be granted for failure to
state a claim upon which relief can be granted, and based
on the defenses absolute immunity and collateral estoppel,
and that Plaintiff's Amended Complaint be dismissed with
prejudice.n

### NOTICE OF RIGHT TO FILE OBJECTIONS

A copy of this report and recommendation shall be
served on all parties in the manner provided by law.  Any
party who objects to this recommendation or anything in it
must, within fourteen (14) days of the date of service of
this document, file specific written objections with the
Clerk of this Court.  *See* 28 U.S.C. § 636(b)(1);
FED.R.CIV.P. 72(B); S.D. ALA. L.R.72.4.  In order to be
specific, an objection must identify the specific finding
or recommendation to which objection is made, state the
basis for the objection, and specify the place in the
Magistrate Judge's report and recommendation where the
disputed determination is found.  An objection that merely
incorporates by reference or refers to the briefing before
the Magistrate Judge is not specific.

DONE this 30th day of March, 2015.

                                    s/BERT W. MILLING, JR.
                                    UNITED STATES MAGISTRATE JUDGE